**WO**  NOT FOR PUBLICATION

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Amanda Rae Sawyer,<br><br>Plaintiff,<br><br>v.<br><br>Carolyn W. Colvin,<br><br>Defendant. | No. CV-15-08129-PCT-JJT<br><br>ORDER |

At issue is the denial of Plaintiff Amanda Rae Sawyer's Application for Disability Insurance Benefits (DIB) by the Social Security Administration under the Social Security Act. Plaintiff filed a Complaint on July 22, 2015, asking this Court to review the denial of her benefits. (Doc. 1.) The Court has reviewed the briefs (Docs. 16, 23, 25) as well as the Administrative Record (Doc. 11, R.) and now reverses the Administrative Law Judge's decision (R. at 8–29) as upheld by the Appeals Council (R. at 1–6).

**I.  BACKGROUND**

Plaintiff filed an application for DIB in September 2013, initially alleging disability beginning October 1, 2011. (R. at 11.) After Plaintiff's application was denied initially and on reconsideration, Plaintiff requested a hearing, which an Administrative Law Judge (ALJ) held on January 13, 2015. (R. at 30–53.) On May 15, 2015 the ALJ issued a decision denying Plaintiff's application. (R. at 8–23.) After the ALJ denied Plaintiff's request, the Appeals Council (AC) denied Plaintiff's request for review of the

ALJ's decision on June 24, 2015, making the ALJ decision the final decision of the Commissioner of Social Security. (R. at 1–6.) The present appeal followed.

The Court has reviewed the record, including hearing testimony and medical evidence, in its entirety and provides a short summary below.

### A.     Medical Evidence

Plaintiff initially stated she was disabled because of osteoarthritis, carpal tunnel syndrome, heart issues, dyslexia, eyesight problems, osteoporosis, anxiety, and depression. (*See, e.g.*, R. at 108, 133.)

Plaintiff received treatment from Nurse Practitioner (NP) Ruth Fowler at the Medical Clinics of Arizona from 2010 to 2014. (*See* R. at 406–40, 522–72, 605–22.) During this time, Plaintiff reported frequent falls, weakness, numbness, dizziness, blurred vision, severe headaches, nausea, and back pain. (*See, e.g.*, R. at 531, 558, 613.) NP Fowler diagnosed Plaintiff with the following: hypertension, unspecified hypothyroidism, osteoarthrosis, other allied disorders of the spine, joint pain, dizziness, headaches, and carpal tunnel syndrome. (*See, e.g.*, R. at 408, 536.)

From 2011 to 2014, Plaintiff sought treatment for her arthritis at Mohave Arthritis, and Dr. Burhan Chinikhanwala diagnosed her with osteoarthritis of the hand, arthralia (joint pain) unspecified, carpal tunnel syndrome, back pain, and systemic lupus erythematosus (SLE). (*See, e.g.*, R. at 371, 375, 379, 586–87, 593.) She sometimes reported that with the use of her pain medications she felt better and had less pain. (*See, e.g.*, R. at 373, 379.) In a report from March 2011, Dr. Chinikhanwala noted Plaintiff's recent labs showed positive antinuclear antibodies (ANA), which are used to identify problems with the immune system, and negative rheumatoid factor. (R. at 377.) Dr. Chinikhanwala stated Plaintiff had a history of positive ANA with no signs of active lupus. (R. at 378.) In 2014, Plaintiff reported she continued to have achy and burning pain. (*See, e.g.*, R. at 588.)

In May 2012, Dr. Kunsman, DO, conducted a thirty-minute administrative exam of Plaintiff. (R. at 399–405.) Plaintiff complained of constant and stabbing shoulder, hip,

and hand pain (ranking her pain at 8/10) with episodes of worsening pain (ranking that pain at 10/10). (R. at 399.) She described heart pain dating back 10 years and pain in her wrist and fingers she associated with carpal tunnel syndrome, which was confirmed as such through an electromyogram. (R. at 399.) Dr. Kunsman noted Plaintiff was able to complete self-care activities, including meals, hygiene, and housework and ambulate without significant limitations throughout the day. (R. at 400.) Upon examination, he also found Plaintiff had a normal range of motion. (R. at 403.) Dr. Kunsman concluded Plaintiff had osteoarthritis and carpal tunnel syndrome. (R. at 404.)

In October 2012, Dr. Robert Locke, DO, examined Plaintiff. He reviewed her nerve conduction tests and found she had carpal tunnel syndrome in bilateral wrists and possible underlying cervical radiculopathy. (R. at 623–24.)

The medical evidence also reveals Plaintiff had issues with her vision. Records from Western Medical Eye Center in 2013 note Plaintiff's diagnosis of SLE. (R. at 462.) She was warned that her lupus medication, Plaquenil, could cause deterioration of her vision. (R. at 464.)

In 2013 and 2014, Plaintiff went to Kingman Neurology with complaints of headaches and frequent falls. (*See* R. at 476–88.) In October 2014, she reported that prior to taking Plaquenil she had headaches about 20 times a month which lasted five to seven hours with photophobia and nausea. (R. at 582.) She also still experienced weakness in her right lower extremity and could only stand for a short period of time due to instability. (R. at 582.) Dr. Aguila diagnosed Plaintiff with migraine headaches, SLE, and probable peripheral neuropathy. (R. at 477, 479, 583.)

In 2013 and 2014, Plaintiff also saw Dr. Okey Oparanaku at Mohave Arthritis Associates. (*See* R. at 507–21.) In November 2013, he diagnosed her with unspecified connective tissue disease, arthritis unspecified, polyarthritis, neuropathy, and carpal tunnel release surgery. (*See, e.g.*, R. at 443, 446.) He noted Plaintiff had positive ANA and associated systemic constitutional symptoms. (R. at 443–44.) In 2014, Dr. Oparanaku diagnosed Plaintiff with SLE (polyarthritis, neurologic symptoms, ANA) and carpal

tunnel syndrome. (*See, e.g.*, R. at 491, 493, 495, 497, 508, 516.) Plaintiff initially took Plaquenil to treat lupus, but later stopped taking the medication because it was negatively affecting her vision. (R. at 491.) She continued to experience dizziness, falls, and headaches, and Dr. Oparanaku noted Plaintiff's worsening neuropathic symptoms and fatigue; he started her on Imuran (for her arthritis and pain) and offered her a walker to prevent falls. (R. at 491–92.)

In 2014, Dr. M. Dale Parry, DO, completed a Fatigue Questionnaire for Treating Physicians. (R. at 466.) He stated Plaintiff is fatigued daily and sleeps for six to eight hours a day and would be absent from work 30 days a month due to fatigue. (R. at 466.) He also conducted a medical assessment finding Plaintiff could sit for a single period of 45 minutes at a time and less than one hour total in an eight-hour workday. (R. at 467–69.) He noted Plaintiff could stand/walk for a single period of two hours at a time and could be on her feet for no more than two hours in an eight-hour workday. (R. at 467–69.) Dr. Parry and NP Fowler also completed a Fatigue Questionnaire for Treating Physicians in January 2015 indicating Plaintiff was moderately, markedly, and extremely impaired in the various listed functions due to fatigue. (R. at 630.)

In March 2015, Dale Garrison, DO, examined Plaintiff. At the exam, Plaintiff reported she was able to complete self-care activities including meals, hygiene, and light house work, and she could drive a vehicle. (R. at 632.) Dr. Garrison concluded Plaintiff could sit for eight, stand for six, and walk for five hours a day. (R. at 639.) He noted limitations of Plaintiff's use of her hands due to carpal tunnel. (R. at 640.) Dr. Garrison, however, was not able to review imaging or records in his review and assessment of Plaintiff. (R. at 644.)

During the relevant time period, Plaintiff took various medications for her pain and arthritis including Mobic, Ultram, and Meloxicam. (*See, e.g.*, R at. 450.)

### B. Plaintiff's Testimony

Plaintiff testified at the hearing before the ALJ on January 13, 2015. (*See* R. at 30–53.) She testified she has constant pain, which with her medication, is usually moderate,

- 4 -

but increases with activity (R. at 40–41.) Plaintiff stated her conditions make her tired and she has difficulty concentrating. (R. at 37.) Her neuropathy affects her arms, legs, and back, which often go numb. (R. at 38–39.) Plaintiff testified that she continues to have headaches every day, some of which last up to six hours. (R. at 39.) She presented at the hearing with a walker, which she needs for balance due to her neuropathy and previous falls. (R. at 36.) Plaintiff testified that Dr. Oparanaku diagnosed her with lupus around January 2013. (R. at 35.) Although Plaintiff had surgery for her carpal tunnel, she still has difficulty gripping and numbness in her hands. (R. at 38, 43.)

Plaintiff testified she can sit for about 10 to 20 minutes before she needs to change positions and, without the assistance of a walker, she can stand and walk for about five minutes before she needs to sit down. (R. at 42.) She did not believe she could work full time due to the numbness in her hands, difficulty concentrating, and memory loss. (R. at 46.)

### C.     The ALJ's Opinion

ALJ Randolph E. Schum issued an opinion dated May 15, 2015, in which he concluded Plaintiff was not disabled under sections 216(i) and 223(d) of the Social Security Act. (R. at 23.) The ALJ began his analysis by stating that Plaintiff met the insured status requirement and had not engaged in substantial gainful activity since her alleged onset date of October 1, 2011. (R. at 13.) The ALJ then listed unspecified connective tissue disease, unspecified polyarthritis, status post right carpal tunnel release, and history of headaches as severe impairments. (R. at 13.) The ALJ also noted the medical record established the following non-severe medically determinable impairments: hypertension, hypothyroidism, somatic disorder, anxiety disorder, and depressive disorder. (R. at 14.)

Proceeding with the five-step inquiry, the ALJ found that the impairments or combination of impairments did not meet or medically equal the severity of the applicable listed impairments. (R. at 16.) The ALJ then stated his finding that Plaintiff had the residual functional capacity (RFC) to perform sedentary work as defined in 20

CFR §§ 404.1567(a) and 416.967(a), with restrictions, including that she can sit for at least six hours and stand and/or walk up to two hours of an eight-hour workday. (R. at 17.)

The ALJ found Plaintiff's medically determinable impairments could reasonably be expected to cause her alleged symptoms, but that Plaintiff's statements regarding the intensity, persistence and limiting effects of the symptoms was not entirely credible. (R. at 18–19.) The ALJ found Plaintiff's medical record did not support the severity of impairments and symptoms alleged, which tended to undermine the strength of her allegations. (R. at 18.) With regard to medical opinions, the ALJ gave partial weight to the opinion of Dr. Garrison, a consultative examiner because he did not review Plaintiff's medical records. (R. at 19.) He gave no significant weight to Dr. Parry, one of Plaintiff's physicians, because he found the medical records clearly contradicted Dr. Parry's opinion. (R. at 20.)

After determining Plaintiff's RFC, the ALJ found there were jobs in significant numbers in the national economy that the Plaintiff could perform. (R. at 21.) The ALJ thus found Plaintiff was "not disabled." (R. at 21–22.)

## II.     LEGAL STANDARDS

The district court reviews only those issues raised by the party challenging the ALJ's decision. *See Lewis v. Apfel*, 236 F.3d 503, 517 n.13 (9th Cir. 2001). The court may set aside the Commissioner's disability determination only if the determination is not supported by substantial evidence or is based on legal error. *Orn v. Astrue*, 495 F.3d 625, 630 (9th Cir. 2007). Substantial evidence is more than a scintilla, but less than a preponderance; it is relevant evidence that a reasonable person might accept as adequate to support a conclusion considering the record as a whole. *Id*. In determining whether substantial evidence supports a decision, the court must consider the record as a whole and may not affirm simply by isolating a "specific quantum of supporting evidence." *Id*. As a general rule, "[w]here the evidence is susceptible to more than one rational

interpretation, one of which supports the ALJ's decision, the ALJ's conclusion must be upheld." *Thomas v. Barnhart*, 278 F.3d 947, 954 (9th Cir. 2002) (citations omitted).

To determine whether a claimant is disabled for purposes of the Social Security Act, the ALJ follows a five-step process. 20 C.F.R. § 404.1520(a). The claimant bears the burden of proof on the first four steps, but the burden shifts to the Commissioner at step five. *Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999). At the first step, the ALJ determines whether the claimant is engaging in substantial gainful activity. 20 C.F.R. § 404.1520(a)(4)(i). If so, the claimant is not disabled and the inquiry ends. *Id*. At step two, the ALJ determines whether the claimant has a "severe" medically determinable physical or mental impairment. 20 C.F.R. § 404.1520(a)(4)(ii). If not, the claimant is not disabled and the inquiry ends. *Id*. At step three, the ALJ considers whether the claimant's impairment or combination of impairments meets or medically equals an impairment listed in Appendix 1 to Subpart P of 20 C.F.R. Pt. 404 (Listing of Impairments). 20 C.F.R. § 404.1520(a)(4)(iii). If so, the claimant is automatically found to be disabled. *Id*. If not, the ALJ proceeds to step four. *Id*. At step four, the ALJ assesses the claimant's residual functional capacity and determines whether the claimant is still capable of performing past relevant work. 20 C.F.R. § 404.1520(a)(4)(iv). If so, the claimant is not disabled and the inquiry ends. *Id*. If not, the ALJ proceeds to the fifth and final step, where he determines whether the claimant can perform any other work based on the claimant's residual functional capacity, age, education, and work experience. 20 C.F.R. § 404.1520(a)(4)(v). If so, the claimant is not disabled. *Id*. If not, the claimant is disabled. *Id*.

### III. ANALYSIS

Plaintiff argues that the ALJ committed legal error by: (1) failing to recognize Plaintiff's diagnosis of SLE as a medically determinable impairment; (2) ignoring the assessment of Plaintiff's nurse practitioner and instead relying on the opinion of agency physician, Dr. Garrison; and (3) rejecting Plaintiff's symptom testimony in the absence of

specific, clear, and convincing reasons supported by substantial evidence. (Doc. 16, Pl.'s Br. at 1–2.)

### A. The ALJ Did Not Err By Failing to Recognize Plaintiff's Diagnosis of SLE

Plaintiff argues that the ALJ committed materially harmful error by failing to recognize her diagnosis of SLE as a medically determinable impairment and relying on his own findings rather than those of the medical professionals. (Pl.'s Br. at 14.) At step two, the ALJ determined Plaintiff's severe impairments included unspecified connective tissue disease. (R. at 13.) To support his finding, the ALJ cited medical record evidence in which Plaintiff was diagnosed with the general unspecified connective tissue disease, but not specifically SLE despite Plaintiff's positive ANA results. (R. at 500.) Plaintiff points to other medical records that show Plaintiff was diagnosed with SLE. (*See, e.g.*, R at 492.) Because some of Plaintiff's medical records note SLE as a diagnosis and others only include unspecified connective tissue disease, the evidence is susceptible to more than one interpretation as to whether Plaintiff has SLE. Because the evidence regarding Plaintiff's SLE is subject to more than one rational interpretation, one of which supports the ALJ's decision that SLE was not one of Plaintiff's severe impairments, the ALJ's decision was supported by substantial evidence and must be upheld. *See Thomas*, 278 F.3d at 954.

Plaintiff also argues that the ALJ's failure to recognize SLE as a medically determinable impairment was materially harmful because Plaintiff's main SLE symptom was her fatigue, and it was fatigue that made it impossible for her to work. (Pl.'s Br. at 18.) The ALJ, however, found Plaintiff had other severe impairments at step two, and he went on to analyze the impact of Plaintiff's impairments in determining her RFC. (R. at 17–20.) He considered Plaintiff's testimony regarding her pain and her limitations as to sitting, standing, and walking, as well as the medical record. (R. at 17–20.) The ALJ's decision reflects that he considered Plaintiff's limitations, including those posed by SLE, unspecified connective tissue disease, or other impairments at step four of the disability

determination. *See Lewis v. Astrue*, 498 F.3d 909, 911 (9th Cir. 2007). Accordingly, any error that the ALJ made in failing to explicitly include SLE at step two was harmless, and the Court will not reverse the ALJ's decision. *See id*; *Burch v. Barnhart*, 400 F.3d 676, 679 (9th Cir. 2005) (ALJ decisions will not be reversed for errors that are harmless).

### B. The ALJ Erred By Not Giving Weight to NP Fowler

Plaintiff contends that the ALJ committed materially harmful error by rejecting the assessment of Plaintiff's treating provider, NP Fowler, and instead relying on the opinion of agency physician, Dr. Garrison, who examined Plaintiff once and did not review Plaintiff's medical records. (Pl.'s Br. at 18.) Defendant admits that the ALJ erred by not addressing the January 2015 Fatigue Questionnaire that Dr. Parry and NP Fowler completed, but contends that the error was harmless because it would not affect the ALJ's ultimate decision. (Doc. 23, Def.'s Br. at 10.) Defendant contends that the ALJ provided specific and legitimate reasons for discounting the February 2014 Fatigue Questionnaire that Dr. Parry completed on the same form as the January 2015 Fatigue Questionnaire at issue, and that the February 2014 Questionnaire was more limiting than the January 2015 Questionnaire that the ALJ did not discuss. (Def.'s Br. at 11.) From this, the Defendant asserts that because the ALJ rejected the February 2014 Questionnaire, "it is not difficult to conclude that he would also reject a slightly less limiting statement, on the exact same form, signed by the exact same doctor," and thus, the error was harmless. (Def.'s Br. at 11.)

"ALJ errors in social security cases are harmless if they are 'inconsequential to the ultimate nondisability determination' and [] 'a reviewing court cannot consider [an] error harmless unless it can confidently conclude that no reasonable ALJ, when fully crediting the testimony, could have reached a different disability determination.'" *Marsh v. Colvin*, 792 F.3d 1170, 1173 (9th Cir. 2015) (quoting *Stout v. Comm'r Soc. Sec. Admin.*, 454 F.3d 1050, 1055–56). Here, NP Fowler treated Plaintiff for approximately four years and thus had a long-term treating relationship with the Plaintiff and knowledge of her conditions. While Dr. Parry alone completed the February 2014 Questionnaire, both he and NP

- 9 -

Fowler completed the 2015 Questionnaire. The Court finds it is not obvious that the ALJ would reject the 2015 Questionnaire where it was completed in part by NP Fowler, who had a long-term treating relationship with Plaintiff, and thus is distinguishable from the 2014 Questionnaire.

In the January 2015 Fatigue Questionnaire, NP Fowler and Dr. Parry indicate Plaintiff had moderate—claimant's impairments reduce ability to function—limitations in two categories, marked—claimant's ability to function is severely limited—limitations in three categories, and extreme—claimant has no useful ability to function—limitations in one category. (R. at 630.) The Questionnaire also states NP Fowler and Dr. Parry believed Plaintiff would be off task due to fatigue five hours in an eight-hour workday. (R. at 630.) If an ALJ fully credited the testimony of NP Fowler in the 2015 Questionnaire, a reasonable ALJ would have reached a different disability determination given Plaintiff's significant limits due to fatigue that NP Fowler assessed. *See Marsh*, 792 F.3d at 1173. In the circumstances of this case, where the ALJ did not address NP Fowler's January 2015 Questionnaire, the Court cannot "confidently conclude" that the error was harmless. *See id.*; *Stout*, 454 F.3d at 1056. Accordingly, the Court will remand to the ALJ to consider NP Fowler's medical assessment of Plaintiff.

### C. The ALJ Erred By Rejecting Plaintiff's Symptom Testimony

Plaintiff argues that the ALJ committed materially harmful error by rejecting her symptom testimony. (Pl.'s Br. at 25.) If an ALJ finds there is an underlying medically determinable impairment that could reasonably be expected to produce a plaintiff's symptoms, in the absence of a finding that the plaintiff is malingering, her symptom testimony can only be rejected on the basis of specific, clear, and convincing reasons. *Brown-Hunter v. Colvin*, 806 F.3d 487, 493 (9th Cir. 2015). Here, the ALJ made no finding of malingering and found that Plaintiff's medically determinable impairments could reasonably cause her alleged symptoms. (R. at 18–19.) Accordingly, the ALJ was obligated to provide specific, clear and convincing reasons for not finding Plaintiff's testimony credible. *See Brown-Hunter*, 806 F.3d at 493. The Court rejects Defendant's

contention that the substantial evidence standard applies and follows the clear Ninth Circuit case law that establishes the clear and convincing standard applies when reviewing an ALJ's decision to discount a plaintiff's symptom testimony. *See id.*

The ALJ cites specific evidence in the record to support his finding that Plaintiff is not fully credible. First, the ALJ discounted Plaintiff's credibility because he found her "activities of daily living illustrated a person more able bodied than alleged." (R. at 18.) An ALJ may properly discount symptom testimony based on evidence of a claimant's inconsistent activities, *see Orn*, 495 F.3d at 639, but a claimant need not be "utterly incapacitated" to be disabled, *see Webb v. Barnhart*, 433 F.3d 683, 688. The ALJ pointed to Plaintiff's description of her daily activities including that she regularly completed her personal hygiene, took care of family pets, prepared simple meals, did laundry, cleaned an hour at a time, drove, and shopped for groceries for up to an hour. (R. at 238, 274, 400.) The Court finds that through this evidence, the ALJ provided a clear and convincing reason for discounting Plaintiff's symptom testimony. Plaintiff's symptom testimony that she can only sit for about 10 to 20 minutes before changing positions, and can only stand or walk for about five minutes without her walker and 10 minutes with her walker (R. at 42) may be inconsistent with the evidence, including her own description of her daily activities in her function reports, that she can clean her house and shop for groceries for an hour. However, while the ALJ provided a clear and convincing reason for discounting Plaintiff's credibility, Plaintiff's daily activities and the frequency of those activities do not suggest that Plaintiff is able to do full-time work.

Second, the ALJ found that treatment notes show Plaintiff responded well to conservative treatment in contradiction to her testimony of continued disabling symptoms. (R. at 18.) The ALJ notes instances in the record that indicate Plaintiff's pain lessened as a result of taking pain medications. (R. at 18.) Although Plaintiff did sometimes report that her pain was relieved through medication, there are also numerous instances where she reports constant pain, that the side effects of her medication are so problematic that she must stop taking it, and that her pain prevents her from walking,

1  standing, and concentrating for sustained periods of time. (*See, e.g.*, 476–88, 491–92,
2  588.) The Court does not find that evidence that Plaintiff's pain was sometimes less
3  intense with the use of medication is inconsistent with her symptom testimony. Plaintiff
4  could have reasonably experienced pain and relief at varying levels during the relevant
5  time period of her proceedings where she continuously sought treatment. That Plaintiff
6  may have experienced some sporadic relief or less pain on certain days does not provide
7  a clear and convincing reason for finding Plaintiff not credible.

8  Third, the ALJ discounted Plaintiff's testimony because he found the objective
9  medical evidence failed to support the severity of her alleged symptoms. (R. at 18.)
10  Although the ALJ lists specific, objective medical evidence, he does not explain how his
11  list of evidence contradicts Plaintiff's symptom testimony regarding her fatigue due to
12  SLE and/or unspecified connective tissue disease or her other neuropathy issues. In
13  addition, while the ALJ points to some records that he states contradict Plaintiff's
14  testimony, other records support her testimony. For example, the ALJ points to records
15  that describe Plaintiff's normal gait, stating such records contradict her testimony that she
16  needs a walker, but the record also indicates that in 2014, Dr. Oparanaku offered Plaintiff
17  a walker with a seat. (R. at 491.) He offered the walker to Plaintiff in order to prevent her
18  from falling, and she was advised to avoid driving and operating machinery due to her
19  instability. (R. at 491.)

20  The ALJ also misread the record regarding Plaintiff's recent positive ANA factor
21  test that showed Plaintiff suffered from immune system issues, and thus did not consider
22  Plaintiff's positive ANA test in his determination of what constituted objective medical
23  evidence. (*See* Def.'s Br. at 9; R. at 501–02.) Finally, as discussed, the ALJ did not
24  consider the 2015 Fatigue Questionnaire that indicates Plaintiff's significant limitations
25  due to fatigue in his consideration of the objective medical evidence. The ALJ cannot
26  reject Plaintiff's subjective complaints solely because the medical evidence he selectively
27  chose does not fully corroborate the alleged severity of her pain. *Burch*, 400 F.3d at 680.
28  The ALJ did not provide a clear and convincing reason for finding the Plaintiff not

1  credible in light of the medical record, and the ALJ should reconsider the credibility of
2  Plaintiff's testimony in light of the entire medical record, including the 2015 Fatigue
3  Questionnaire.

4        Accordingly, the ALJ erred in discounting Plaintiff's symptom testimony on the
5  basis of Plaintiff's positive response to medication and the objective medical record. The
6  Court will remand to the ALJ to reconsider Plaintiff's symptom testimony.

7      **D.**    **The Credit-As-True Rule Does Not Apply**

8        Plaintiff asks that the Court apply the "credit-as-true" rule, which would result in
9  remand of Plaintiff's case for payment of benefits rather than remand for further
10 proceedings. (Pl.'s Br. at 31.) Plaintiff states there are no issues that must be addressed
11 once the improperly discredited evidence is credited. (Pl.'s Br. at 32.)

12       The credit-as-true rule only applies in cases that raise "rare circumstances" that
13 permit the Court to depart from the ordinary remand rule under which the case is
14 remanded for additional investigation or explanation. *Treichler v. Comm'r of Soc. Sec.*
15 *Admin.*, 775 F.3d 1090, 1099–1102 (9th Cir. 2014). These rare circumstances arise when
16 three elements are present. First, the ALJ fails to provide legally sufficient reasons for
17 rejecting medical evidence. *Id*. at 1100. Second, the record must be fully developed, there
18 must be no outstanding issues that must be resolved before a determination of disability
19 can be made, and further administrative proceedings would not be useful. *Id*. at 1101.
20 Further proceedings are considered useful when there are conflicts and ambiguities that
21 must be resolved. *Id*. Third, if the above elements are met, the Court may "find[] the
22 relevant testimony credible as a matter of law . . . and then determine whether the record,
23 taken as a whole, leaves 'not the slightest uncertainty as to the outcome of [the]
24 proceeding.'" *Id*. (citations omitted).

25       In this case, the ordinary remand rule, not the credit-as-true rule, applies. Because
26 the ALJ must consider the 2015 Fatigue Questionnaire from NP Fowler and Dr. Parry,
27 and because the ALJ must reconsider whether Plaintiff's symptom testimony was
28

credible, this case still involves evidentiary conflicts that must be resolved, and there is still uncertainty as to the outcome of the proceeding.

IT IS THEREFORE ORDERED reversing the decision of the Administrative Law Judge (R. at 8–29) as upheld by the Appeals Council (R. at 1–6). The Court remands this matter for further proceedings as to the 2015 Fatigue Questionnaire and the opinion of NP Fowler and Plaintiff's symptom testimony.

IT IS FURTHER ORDERED directing the Clerk of Court to enter judgment accordingly and close this matter.

Dated this 1st day of July, 2016.

Honorable John J. Tuchi
United States District Judge